[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has moved for an award of counsel fees to defend an appeal which was taken by the defendant and to defend against various post-judgment motions filed by the defendant subsequent to August 2, 1995, which was the date of judgment of dissolution of marriage.
Both parties were represented by counsel at the time, and they entered into a stipulation which was ordered incorporated into the judgment. The agreement resolved all issues, including custodial and financial matters between the parties, and apparently was approximately an equal division of assets.
The defendant, however, refused to adhere to the agreement. He would not sign the QDRO papers until specifically ordered to do so by the Court following a contempt motion.
In July 1998 (almost three years after the judgment) he moved to open the judgment claiming the plaintiff fraudulently concealed her intention to remarry and also claiming a mutual mistake in the agreement.
His motion was denied, and he then unsuccessfully appealed from the denial of his motion. Pospisil v. Pospisil, 59 Conn. App. 446 (2000); cert. denied 254 Conn. 940 (2000).
The parties stipulated that the plaintiffs attorney's fees totaling $8,017.50 are reasonable, but the defendant disputes that he should be CT Page 6164 ordered to pay attorney's fees to the plaintiff.
A portion of the $8,017.50 — $3,450 — was previously found to be reasonable, however the Court, at a hearing held on June 22, 1999 (Steinberg, J.) deferred the decision of payment because of the limited financial resources of the parties. The remaining amount is for fees incurred after June 22, 1999 which were largely (but not entirely) related to the appeal.
The defendant essentially argues that he is without sufficient liquid assets to pay attorney's fees. In truth, neither party is in a position to easily bear the legal costs associated with this action. It is indeed unusual to see legal fees of nearly $30,000 in the defendant's case and $22,000 in the plaintiffs when one considers the assets and income levels of the parties.
Attorney's fees may be awarded in accordance with the provisions of Connecticut General Statutes § 46b-62, using the respective financial abilities of the parties and the criteria set forth in Connecticut General Statutes § 46b-82 which include the age, health, occupation, amount and sources of income, vocational skills, employability, estate and needs of the parties.
But our case law also instructs us that the availability of ample liquid funds or ability to pay is not an absolute litmus test. Puris v.Puris, so Conn. App. 443 (1993). The Court may also consider if the failure to award attorney's fees would undermine the other financial orders in the case. Bornemann v. Bornemann, 245 Conn. 508, 541 (1998).
Thus, the Court is given discretion to exercise equitable principles, not to punish, but to advance a fair and equitable resolution of the issue. Eldridge v. Eldridge, 244 Conn. 523, 537 (1998); Tessitore v.Tessitore, 31 Conn. App. 40, 44 (1993).
This Court concludes that under all circumstances of this case, giving consideration to the foregoing principles, it would be unjust, inequitable, and would undermine the integrity of the judgment if attorney's fees were not awarded.
This case went forward as an uncontested dissolution, with a negotiated stipulation. The defendant tried to open the judgment for reasons which were determined to be without merit and it was his initiative that caused the plaintiff to incur substantial legal fees to defend. As an aside, it is difficult to comprehend how a post-dissolution remarriage could be the basis of a fraud perpetrated on the defendant. It is clearly foreseeable that parties might well remarry and, in fact the defendant has himself CT Page 6165 remarried since the dissolution. Whether it was within two or three months or years would seem to have little, if any, significance.
The defendant's income is $790 weekly from a disability pension. He has no other liquid assets but does still maintain an equity interest in the family home together with his ex-wife. (She holds a $40,000 mortgage), but the defendant's equity interest has an approximate worth of $45,000.
The plaintiffs net weekly income is approximately $500 weekly from her job and pension award and her equity interest in the family home is secured by the aforesaid mortgage. She has been paying her attorney $50 per month toward his bill. Both have credit card debt, and neither has ample liquid assets.
The defendant continues to reside in the family home with their now eighteen year old daughter and his weekly living expenses are twice that of the plaintiffs largely due to higher housing expenses and food.
If there were ample funds, this Court would not hesitate to award counsel fees in the stipulated amount of $8,017.50, based on the fact that these added fees were caused by his behavior and actions, and the resultant inequitable diminution to the financial orders awarded to the plaintiff. However, because there are financial constraints and little likelihood either party will accumulate additional assets, the Court will order the defendant to pay additional counsel fees of $5,500 which he can ultimately pay from his interest in the real estate.
In the event said counsel fees are not paid within 90 days of the date of this decision, interest shall run on the amount of unpaid counsel fees at the rate of 4% per annum commencing on the 91st day following this decision.
 _________________ Klaczak, Judge